## A07A2177. THE STATE v. TORRES.
(660 SE2d 763)

MILLER, Judge.

Following his indictment for possession of marijuana with the intent to distribute, Mario Torres moved to suppress evidence obtained as a result of his arrest. The trial court granted that motion,

and the State now appeals, asserting as error the trial court's finding that Torres' arrest was illegal. Discerning no error, we affirm.

When reviewing a ruling on a motion to suppress, where, as here, the evidence is uncontroverted and there exists no question regarding witness credibility, we review de novo the trial court's application of the law to the facts presented. *State v. Dymond*, 248 Ga. App. 582, 584 (546 SE2d 69) (2001). In doing so, however, "we construe all evidence presented in favor of the trial court's findings and judgment" (*McDaniel v. State*, 263 Ga. App. 625, 626-627 (1) (588 SE2d 812) (2003)), and "[w]e will not disturb the trial court's order on a motion to suppress if there is any evidence to support it." Id.

The evidence presented at the motion to suppress hearing showed that on July 23, 2004 Deputy Brian Dyer of the Whitfield County Sheriff's Department stopped a vehicle driven by Torres for failure to maintain lane. Torres produced his driver's license and insurance card for Dyer who, upon seeing that Torres had an Illinois driver's license, asked him how long he had lived in Georgia. Torres responded that he had moved to the state in January 2004.

After running a check on Torres' vehicle and license, Dyer wrote Torres a citation for failure to obtain a Georgia driver's license within 30 days of becoming a state resident, as required by OCGA § 40-5-20. At Dyer's request, Torres exited his car so that Dyer could explain the citation to him and advise him of his court date. When Dyer asked Torres to sign the ticket, however, Torres refused to do so, explaining that he had never been advised that he was required to obtain a Georgia driver's license. Dyer then asked Torres "if there was anything [he] could say to get [Torres] to sign the citation." Torres responded negatively, and Dyer arrested him. During a search of Torres' vehicle conducted incident to that arrest, Dyer discovered three bags of marijuana, and Torres was subsequently charged with possession of marijuana with intent to distribute, in violation of OCGA § 16-13-30 (b).

Before trial, Torres moved to suppress evidence of the marijuana on the grounds that it resulted from his illegal arrest. Specifically, Torres argued that OCGA § 40-13-2.1 (a) sets forth the procedures to be followed when a person refuses to sign a traffic citation and that Dyer's failure to comply with the requirements of that statute rendered his arrest illegal. The trial court agreed and granted the motion to suppress, and this appeal followed.

The State argues that the trial court erred in granting the motion to suppress because Georgia law gives police officers the option of either making a custodial arrest of an individual stopped for a traffic offense or making a noncustodial arrest by issuance of a citation. See OCGA §§ 17-4-20; 17-4-23 (a). The issue before this Court, however is not whether Dyer could have arrested Torres *instead* of issuing him

a citation; he could have. See, e.g., *State v. Lowe*, 263 Ga. App. 1, 1 (587 SE2d 169) (2003). Rather, the question is whether, having elected to issue a citation, Dyer could make a custodial arrest of Torres when he refused to sign the citation, rather than following the procedures set forth in OCGA § 40-13-2.1 (a). We find that he could not.

OCGA § 40-13-2.1 (a) provides:

> A person who is issued a citation as provided in this chapter . . . , shall sign the citation to acknowledge receipt of the citation and of his or her obligation to appear for trial. The officer *shall* advise the person that signing the citation is not an admission of guilt and that failure to sign will result in the person having to post a cash bond. If the person refuses to sign the citation, it shall constitute reasonable cause to believe that the person will not appear at trial and the officer may bring the person before a judicial officer or traffic violations bureau to post a bond as is otherwise provided by law.

(Emphasis supplied.)

This language makes clear that once an officer issues a citation, he is obligated to follow the procedures set forth in the statute. See, e.g., *McFarland & Assoc. v. Hewatt*, 242 Ga. App. 454, 454 (529 SE2d 902) (2000) ("In its ordinary signification, 'shall' is a word of command, and the context ought to be very strongly persuasive before that word is softened into a mere permission.") (punctuation and footnote omitted); *State v. Henderson*, 263 Ga. 508, 510 (436 SE2d 209) (1993) (holding that "shall" is synonymous with "must," and represents a command).

Dyer's testimony at the motion to suppress hearing established that he was unfamiliar with OCGA § 40-13-2.1 (a) and that he failed to follow its procedures. Specifically, Dyer admitted that he did not advise Torres that signing the citation would not be an admission of guilt or that, if he refused to sign, he would need to post a cash bond.

The State argues that an officer is entitled to "change his mind" and effectuate an arrest in lieu of issuing a citation where a motorist refuses to sign such a citation. This logic, however, would allow a law enforcement officer to circumvent the requirements of OCGA § 40-13-2.1 (a) by arresting anyone who refuses to sign a traffic citation without informing them that signing is not an admission of guilt and that failure to sign constitutes reasonable cause to bring such person before a judicial officer to post bond. Neither police officers nor this Court can nullify a legitimate statute by interpreting it so that compliance with the same is optional. See *Trench Shoring Svcs. of Atlanta v. Westchester Fire Ins. Co.*, 274 Ga. App. 850, 852 (619 SE2d

361) (2005) ("It is the right of the General Assembly to pass all laws and it is the duty of the court to neither add to nor take away from the laws as thus passed, but to enforce them as written.") (citation and punctuation omitted).

Finally, assuming arguendo that Dyer could have made a custodial arrest of Torres for the purpose of bringing him before a judicial officer to secure a cash bond, Dyer freely admitted that such was not the purpose of the arrest.[1] Rather, Dyer testified that he arrested Torres because he refused to sign the traffic citation charging him with failing to obtain a driver's license in violation of OCGA § 40-5-20.

In light of our holding that Torres' arrest was illegal, we affirm the trial court's order granting Torres' motion to suppress evidence seized as a result of that arrest.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED MARCH 18, 2008 —
RECONSIDERATION DENIED APRIL 8, 2008.

*Kermit N. McManus, District Attorney, Mark P. Higgins, Jr., Assistant District Attorney*, for appellant.
*Michael A. Corbin*, for appellee.

---

[1] Notably, Dyer indicated that, even if he was going to require Torres to post a cash bond, he would not have arrested him for the purpose of securing the same. Dyer stated that in those cases where a cash bond had been required from out of state motorists he did not arrest those motorists, but instead had them follow him to the jail where they could post such a bond.